## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEBBRA GRAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-06-71-F |
| ) | |
| MICHAEL J. ASTRUE,[1] ) | |
| Commissioner, Social Security ) | |
| Administration, ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Debbra Gray ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking

judicial review of Defendant Commissioner's final decision denying Plaintiff's application

for disability insurance benefits under the Social Security Act.  This matter has been

referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C.

§ 636(b)(1)(B).  Upon review of the pleadings, the record ("Tr.") and the parties' briefs,

the undersigned recommends that the Commissioner's decision be affirmed.

### Administrative Proceedings

Plaintiff initiated these proceedings by filing her application seeking disability

insurance benefits in August, 2002  [Tr. 44 - 46].  She alleged that limitations resulting

from difficulties with her vision, lungs, heart, stomach, and legs became disabling as of

August 11, 2000 [Tr. 56 and 77]. Plaintiff's claims were denied initially and upon

reconsideration [Tr. 22 - 24 and 26 - 27]; at Plaintiff's request an Administrative Law

Judge ("ALJ") conducted a December 2004 hearing where Plaintiff, who appeared pro se,

---

[1]Effective February 1, 2007, Michael J. Astrue became Commissioner of Social Security.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Jo Anne B. Barnhart as Defendant in this action.

and a vocational expert testified [Tr. 28 and 200 - 220]. In her June 2005 decision the ALJ found that Plaintiff retained the capacity to perform both her past relevant work and other unskilled jobs and, accordingly, was not disabled within the meaning of the Social Security Act [Tr. 12 - 19]. The Appeals Council of the Social Security Administration declined Plaintiff's request for review [Tr. 5 - 8], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

## Determination of Disability

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. §404.1520(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Plaintiff bears the initial burden of proving that she has one or more severe impairments. 20 C.F.R. § 404.1512; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Where Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner,* 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

## Standard of Review

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

As she did at the administrative hearing, Plaintiff is representing herself before this court. Accordingly, her pleadings will be liberally construed. *See Lawton v. Barnhart,* 121 Fed. Appx. 364, at *365 (10th Cir. Feb. 7, 2005) (unpublished op.). The Tenth Circuit has recently made clear, however, that this standard of liberal construction[2] does not relieve a pro se claimant of the obligation to adequately frame her claims of error when

---

[2]In *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991), the rule of liberal construction was explained in the following manner:

> [T]his rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. At the same time, we do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant.

appealing from an ALJ's decision.  In *Young v. Astrue,* No. 06-6275, 2007 WL 853207 (10th Cir. Mar. 22, 2007) (unpublished op.), the court considered this claim made by a pro se appellant: "The SSA Law Judge and other SSA determination officials did not conduct a true and just examination of the Plaintiff's medical records." *Id.* at *2.  The claimant's only supporting argument was "that agency officials selected medical data from her records to justify that she does not have severe impairments instead of reviewing her overall medical condition." *Id.*  While taking into account "the liberal reading we give to pleadings and other papers of pro se litigants," the *Young* court nonetheless found that the claimant's "generalized and conclusory statements wholly fail to frame or develop any perceived error in the Commissioner's decision [and that,] [a]ccordingly, she has waived review of any decisional errors in the administrative process." *Id.*

The doctrine of waiver – and thus the requirement that issues for review be adequately framed – is equally applicable at each stage of review of a social security decision.  *See Berna v. Chater,* 101 F.3d 631, 632 - 633 (10th Cir. 1996) ("[W]aiver may result from the disability claimant's failure to (1) raise issues before the magistrate judge, (2) to object adequately to the magistrate judge's recommendation, (3)  preserve issues in the district court as a general matter, or (4) present issues properly to this court.") (internal citations omitted).  With these principles in mind, the undersigned has carefully reviewed Plaintiff's briefing in order to determine those issues that have been adequately framed by Plaintiff in this appeal.

**Plaintiff's Claims of Error**

Plaintiff's initial opening brief in this matter referenced her ill health, her inability to obtain a diagnosis and treatment, problems with her daughter, and her claim that she did not know that she could obtain legal representation at no charge until her administrative hearing [Doc. No. 14].  She asked the court to "put my case back in the Court of Hearing and Appeal so I can obtain a lawyer and do it right this time."  *Id.* Although determining that Plaintiff had been fully advised of her rights to representation throughout the process, the undersigned allowed Plaintiff thirty days within which to obtain counsel [Doc. No. 15]; if she continued to represent herself, she was ordered to file a brief "explaining all reasons why she alleges that the ALJ committed error in the June 10, 2005, hearing decision." *Id.* at 2 - 3.

Plaintiff subsequently filed what she labeled a brief, stating that she did not know what a brief was and that she needed time to prepare and subpoena witnesses for her "court case." [Doc. No. 16].  On an appended page she submitted an agenda-type list including opening, closing and witness statements.  *Id.* at 2. The undersigned ordered Plaintiff's "Brief" stricken for reasons including its failure to "reflect in any manner why she is challenging the decision by the Administrative Law Judge on Plaintiff's application for Social Security benefits." [Doc. No. 17, p. 2].  Plaintiff was given an additional twenty days within which to secure counsel or file an appropriate brief on her own behalf.  *Id.*

Plaintiff then filed a brief which, liberally construed, can be read to assert the following claims of error [Doc. No. 18].  First, Plaintiff maintains that her waiver of counsel at the administrative hearing was invalid.  Second, she states that "[t]he

vocational expert said since [Plaintiff] can't see well or use her hands she would not be able to find a job." *Id.*   Finally, Plaintiff contends that medical information she has supplied dating from 1986 is not included in the record.[3]   Following an overview of the ALJ's decision, each of these claims will be addressed in turn.

## Analysis

The ALJ determined that Plaintiff – forty-seven years old, with a year and a half of college education and with past work experience as a sewing machine operator and administrative clerk – was severely impaired by asthma, obesity, anemia, dysfunctional uterine bleeding, autoimmune-related arthritis, osteoarthritis, and hypothyroidism [Tr. 14].   Next, following her review of the medical evidence, the ALJ found that Plaintiff's impairments did not meet the criteria of any listed impairment.[4] [Tr. 14 - 15].   The ALJ then summarized Plaintiff's testimony with regard to her subjective complaints:

> She has problems with her hands, which keep her from working.   She is unable to use her thumbs.   Her hair was falling out because of thyroid problems.   She takes medication for this as well as drops for her bad vision.   She has pain in her abdomen if she sits too long.   Her heart is enlarged.

[Tr. 16].   The ALJ concluded, however, that Plaintiff's complaints were not entirely credible and that while she had severe impairments, such impairments did not interfere with her ability to function.   *Id.*   Based on the opinions of the state agency reviewing

---

[3]Plaintiff also argues that her application was mishandled and delayed and that "[t]hey did not handle it right in the first days, they defaulted by law I should have got approved it would only be fair." [Doc. No. 18].   Not only does Plaintiff fail to cite to any authority in support of this disability by administrative default theory, but it does not appear from the record that there were significant delays in this matter.

[4]*See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A.   "The Listing of Impairments describes, for each of the major body systems, impairments that are considered severe enough to prevent an adult from doing any gainful activity."   20 C.F.R. § 404.1525 (a).

medical sources that Plaintiff could perform light and sedentary work which did not involve fumes, odors, dusts, gases, or poor ventilation, the ALJ determined that Plaintiff retained the residual functional capacity[5] to perform light and sedentary work. [Tr. 16 - 17]. The ALJ noted that Plaintiff's past relevant work did not implicate environmental restrictions and further noted the vocational expert's testimony that Plaintiff's previous occupations as sewing machine operator and administrative assistant required light levels of physical exertion [Tr. 17]. Accordingly, the ALJ determined that Plaintiff could perform her past relevant work as well as other unskilled jobs at the light and sedentary levels of exertion. *Id.* Consequently, Plaintiff was ultimately found to be "not disabled" within the meaning of the Social Security Act. *Id.*

### Waiver of Attorney or Representative at the Administrative Hearing

The record contains a document entitled "Waiver to Representation" which provides

> My social security case has been set for a hearing today. At the beginning of the hearing, the Administrative Law Judge explained to me my right to have an attorney or other representative speak on my behalf.
>
> I understand this explanation of my right to representation. I am ready for my hearing and ready to represent myself without an attorney or representative.
>
> I voluntarily waive my right to an attorney or representative.

[Tr. 43]. The waiver bears Plaintiff's signature and the date of her administrative hearing, December 8, 2004. *Id.*

---

[5]Residual functional capacity ("RFC") "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545 (a) (1).

7

With respect to this waiver and the manner in which it was executed, Plaintiff

claims

> She[6] did ask me if I needed a lawyer, I said yes I just found out I needed
> one.  I told her I asked the lawyer at legal aid that handled my daughter's
> case.  She told me that it would be a conflict of interest.  She[7] said it was
> just a hearing and I would not need a lawyer.  I told her I did not think I
> would need one and besides I did not have money for a lawyer anyway.
>
> We might as well go on because I am all ready sick, if I got an lawyer she
> told me it would be another year before we got back to court, she never told
> me that I could have been assigned a lawyer free.  I did not sign anything
> until court was over, that when I told her I cant see these papers to read
> what I was signing, she said everything that we talked about was on the
> papers and For me to signed on the line where she pointed and to date and
> I did.  I was so sick I could hardly Breath, she knew I was throwing up and
> I was bleeding.

[Doc. No. 18, p. 1].

The certified transcript[8] of the administrative hearing reveals that the ALJ

thoroughly explained Plaintiff's "right to be represented by either an attorney, or non-

attorney representative familiar with Social Security law" along with her "right to

represent [herself]." [Tr. 203 - 204].  When asked by the ALJ if she understood this

explanation, Plaintiff responded that she had "just found out" and that previously "I

---

[6]It is the undersigned's assumption that Plaintiff is referring to the ALJ.

[7]It is unclear whether Plaintiff is referring to the ALJ or to the legal aid attorney.  For purposes of
this report, the undersigned is assuming the reference is to the ALJ.

[8]Plaintiff complains in a conclusory fashion about the tape recorder at her administrative hearing
being turned on and off, specifically claiming that, "I never give yes and no answers." [Doc. No. 18].  Not
only has the transcript of the hearing been certified but Plaintiff has not pointed to any portion of the
transcript where she claims her full and complete testimony was not included.

didn't know that, you know, you would need an attorney for a hearing."[9] [Tr. 204].   At

this point, the following exchange took place between Plaintiff and the ALJ:

> ALJ:        Well it's completely your choice.  Now hearing what you're
>             saying, let's explore this a bit more.  Do you wish to get an
>             attorney, or a non-attorney representative?
>
> CLMT:       Well not now.
>
> ALJ:        Okay, are you sure?
>
> CLMT:       I'd rather just go on.
>
> ALJ:        Okay.  I mean it's your choice.  I mean if you say gee, I want
>             a continuance I want to get one, then that's fine.  I'm not
>             going to force you to proceed if you're telling me you're
>             uncomfortable, or not wanting to proceed.
>
> CLMT:       No, I'd rather go ahead.
>
> ALJ:        Okay. And like I said, I'm not forcing you one way or another,
>             I want to make that clear.
>
> CLMT:       No.
>
> ALJ:        All right.
>
> CLMT:       Thank you.

[Tr. 204 - 205].  There is no indication in the certified transcript that the ALJ advised

Plaintiff either that she did not need a lawyer because "it was just a hearing"[10] or that "it

would be another year before we got back to court"[11] if Plaintiff requested a continuance

---

[9]The undersigned has previously determined that Plaintiff had been fully advised of her rights to representation prior to the hearing [Doc. No. 15, p. 2].  The letter explaining Plaintiff's right to representation included information about representation that could be available free of charge [Tr. 29 - 32]. Plaintiff has not disputed such finding in any of her subsequent briefing.

[10][Doc. No. 18].

[11][Doc. No. 18].

in order to obtain counsel.  Plaintiff's sworn testimony clearly reveals that she understood that she had the right to representation but that she chose to represent herself rather than to delay the hearing.

As to Plaintiff's claim that she "did not sign anything until court was over, that when I told her I cant see these papers to read what I was signing, she said everything that we talked about was on those papers and For me to signed on the line where she pointed and to date and I did," [Doc. No. 18], the transcript of the questions and answers immediately following the above-quoted testimony provides:

ALJ:        Well let me hand down to you a piece of paper that says what you and I have just covered, it also reminds everybody that we did cover this.  And once again, have you look at that, read that and then sign if you would.

CLMT:    I really can't see that, but it's fine print.

ALJ:        Okay.  What it says is that - -

CLMT:    Where do I need to sign?

ALJ:        I'll just read that to you it says.  My Social Security case has been set for a  hearing today.  At the beginning of the hearing the Administrative Law Judge explained to me my right to have an attorney, or other representative speak on my behalf. I understand this explanation of my right to representation. I am ready for my hearing, and ready to represent myself without an attorney or representative. I voluntarily waive my right to an attorney or representative.  That's what that says in there and has a top line for signature, the next line for your Social Security number.  And then the next one the date. . . .

[Tr. 205 - 206].  The waiver form was then marked as an exhibit and entered into the record with Plaintiff offering no objection [Tr. 206].  There is no question that Plaintiff was fully advised as to the precise terms of the waiver prior to the time she signed it;

Plaintiff has failed to demonstrate that her waiver of representation was in anyway invalid.

**The Vocational Expert's Testimony**

Here, Plaintiff's claim is that "[t]he vocational expert said since she can't see well or use her hands she would not be able to find a job." [Doc. No. 18].  Presumably, Plaintiff is referring to the vocational expert's response to the ALJ's hypothetical questions with regard to the availability of jobs for an individual whose visual acuity and bilateral hand usage is restricted [Tr. 216 - 217].  As to Plaintiff's previous work as a sewing machine operator and as an administrative assistant as well as to other jobs at the light and sedentary exertional levels, the vocational expert testified that, "They're either going to require visual acuity, or they're going to require good bilateral hand usage, or both." [Tr. 217].

The ALJ, however, found that Plaintiff was *not* restricted by her vision or by her ability to use her hands.  With regard to Plaintiff's vision, the ALJ found that Plaintiff "sustained a chemical corneal injury to both eyes on August 12, 2000 during the course of her employment." [Tr. 14].  The ALJ noted Plaintiff's treatment in the emergency room the following day and that "[o]n follow up on August 30, 2000, her eyes had healed, and she was given permission to return to work with *no visual limitations*." [Tr. 14 and 97, emphasis added].[12]  As to her hands, Plaintiff testified at her December 8, 2004, administrative hearing that she had experienced difficulty with her hands since 1999,

---

[12]Plaintiff was treated after the accident by Jennie M. Hunnewell, M.D., a specialist in neuro opthalmology and oculoplastic surgery.  In connection with other eye care, Plaintiff had seen an optometrist approximately one year prior to the accident and distance corrections were noted [Tr. 92].  Testing after the accident was consistent [Tr. 14 and 139].

particularly with her thumbs that "don't work right," that she was currently seeing a doctor for the problem, and that tests were being run [Tr. 207 - 208].  The ALJ urged Plaintiff to submit her treatment records; a review of these records shows that Plaintiff complained to Dr. Evans at the OU Medical Center on November 4, 2004, about joint pain in her hands and wrists [Tr. 164]; he recommended over-the-counter medication, *id.*; Dr. Evans noted on January 13, 2005, that imaging of Plaintiff's hand and wrist was normal [Tr. 196].  No further treatment or problems were recorded.  The ALJ found Plaintiff's complaints of hand/wrist pain to lack credibility, specifically finding that "clinical testing has shown no limitations with regard to use of any joint." [Tr. 16].  The ALJ's finding is supported by the hand and wrist testing performed by the consultative examining physician who found Plaintiff able to effectively oppose her thumbs to her finger tips, to manipulate small objects, and to effectively grasp tools [Tr. 142].

Thus, based on her review of the medical record and her assessment of Plaintiff's credibility, the ALJ determined in her written decision that Plaintiff suffered from neither visual nor hand/wrist limitations and, accordingly, included no restrictions in her assessment of Plaintiff's RFC [Tr. 17].  The response by the vocational expert to a hypothetical question setting forth limitations which the ALJ did not ultimately accept as true after her review of all of the evidence proffered by Plaintiff did not bind the ALJ.  *See Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990).  The Plaintiff has not demonstrated any error by the ALJ in connection with the testimony of the vocational expert.

## Medical Evidence of Record

Plaintiff claims that the record does not contain "a lot of medical information that was given since 1986." [Doc. No. 18]. She does not, however, point to any specific evidence or describe how any such evidence would have impacted the ALJ's disability decision. Plaintiff applied for disability payments in August, 2002, claiming that she had been unable to work since August 11, 2000 [Tr. 44 - 46]. It is the obligation of the Social Security Administration to develop a claimant's "complete medical history for at least the 12 months preceding the month in which [claimant] file[s] [her] application unless there is a reason to believe that development of an earlier period is necessary." 20 C.F.R. § 404.1512 (d). Here, the record contains evidence beginning in June, 1999, over twelve months before Plaintiff's alleged date of onset [Tr. 92]. Plaintiff has failed to demonstrate any error in this regard.

## Additional Submissions by Plaintiff

Plaintiff exercised her option to file a reply brief in this matter where she, once again, argues that her case was mishandled administratively [Doc. No. 21, p.2]. In connection with her third claim of error, she maintains that, "All the medical record that was given Was not there so the Judge did not get all that he needed to review to make a decision I gave letters from my Doctors with evidence of all my medical problems Dr. Jennie m. Humnewell, Dr. Young, Dr. Carlies." *Id.* Contrary to Plaintiff's assertion, however, the record does contain treatment records from Jennie M. Hunnewell, M.D. [Tr. 97], from LeRoy E. Young, D.O. [Tr. 107 - 109], and from Paul V. Carlile, M.D. [Tr. 110 - 120].

13

Plaintiff next realleges her symptoms and states that "right now I'm Being treated by Dr. Phenix he increased my thyroid medication and has slow down my Bleeding and I'm losing weight." [Doc. No. 21, p. 2].  In this regard, Plaintiff has submitted a letter from James Phoenix, M.D., dated February 20, 2007, with respect to Plaintiff's *current* medical condition [Doc. No. 22].  Because this is new evidence and was not of record when this matter was before the ALJ and the Appeals Council, the undersigned has not considered the physician's letter in connection with this report.   Moreover, there is no evidence of record that Dr. Phoenix was treating Plaintiff at the time of the Commissioner's final decision and his opinions are not material, i.e., relevant,  to such decision.  Accordingly, remand of this matter to the Appeals Council for consideration of the new evidence is not warranted. The remainder of Plaintiff's reply brief is another statement of her alleged symptoms and impairments with no specific allegation of error by the ALJ.

## RECOMMENDATION AND NOTICE OR RIGHT TO OBJECT

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be affirmed.  The parties are advised of their right to object to this Report and Recommendation by April 30, 2007,  in accordance with 28 U.S.C. §636 and Local Civil Rule 72.1.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 9th day of April, 2007.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE